THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE UNITED STATES ALUMINIUM PRINTING PLATE COMPANY, Respondents, *v.* ERASTUS C. KNIGHT, as Comptroller of the State of New York, Appellant.

1. TAX — FRANCHISE AND SUCCESSION TAXES ARE TAXES UPON CORPORATE PRIVILEGES AND THE RIGHT OF SUCCESSION BY AN INDIVIDUAL, NOT UPON PROPERTY — PROPERTY EXEMPT FROM TAXATION BY FEDERAL LAW MAY BE INCLUDED IN APPRAISAL — NO DISTINCTION EXISTS BETWEEN DOMESTIC AND FOREIGN CORPORATIONS. While the power to tax involves the power to destroy by excessive taxation, when the tax is not imposed for that purpose, nor laid upon property, but upon the franchise of a corporation or upon the right of succession by an individual, and all property, whether exempt by Federal Law or not, is treated alike by including it in the appraisal made to fix the amount of the tax, the state has the power to impose a franchise or a succession tax, even if substantially all the property so appraised is exempt from taxation by the statute of the United States, and in this respect there is no distinction between a domestic and a foreign corporation.

2. CAPITAL OF DOMESTIC CORPORATION INVESTED IN LETTERS PATENT, UNITED STATES BONDS OR COPYRIGHTS MAY BE APPRAISED FOR THE PURPOSE OF ASCERTAINING AMOUNT OF FRANCHISE TAX, THE SAME AS OTHER PROPERTY. The fact that the capital of a domestic corporation is substantially all invested in letters patent issued by the Untited States, which by Federal law is exempt from taxation, does not prevent the

imposition of a franchise tax thereon computed upon the basis of the amount of its capital stock employed within this state (Tax Law, L. 1896, ch. 908, § 182), since, although measured by the value of property, it is not a tax upon property, but is imposed upon the corporation for the privilege of carrying on business in this state and exercising the corporate franchise granted by the state, and the same rule would apply if its capital were invested in United States bonds or copyrights which are also exempt from taxation.

*People ex rel. U. S. A. P. P. Co.* v. *Knight,* 67 App. Div. 333, reversed.

(Argued March 16, 1903; decided April 28, 1903.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 10, 1902, which reversed a determination of the defendant in assessing a franchise tax against the relator and remitting the matter for readjustment.

The facts, so far as material, are stated in the opinion.

*John Cunneen, Attorney-General* (*W. H. Wood* of counsel), for appellant. The capital stock of the relator may be used as the basis of computation of a franchise tax, although wholly invested in patent rights. (*People ex rel.* v. *Campbell,* 138 N. Y. 543; *M. S. Bank* v. *City of Rochester,* 37 N. Y. 365; *People* v. *H. Ins. Co.,* 92 N. Y. 328; 134 U. S. 594; *H. Ins. Co.* v. *New York,* 134 U. S. 594; *People* v. *A. Ins. Co.,* 92 N. Y. 328; *People* v. *E. T. Co.,* 96 N. Y. 387; *People ex rel.* v. *Wemple,* 138 N. Y. 1; *People ex rel.* v. *Roberts,* 156 N. Y. 585.)

*Newell Martin* and *Louis Dean Speir* for respondent. In computing the relator's franchise tax the comptroller should not have included its non-taxable patent rights as a part of its appraised capital. (*People ex rel.* v. *Bd. of Assessors,* 156 N. Y. 417; *People ex rel.* v. *Roberts,* 159 N. Y. 70; *P. S. Co.* v. *Penn.,* 122 U. S. 326.) Patents cannot be taxed by any state or municipal authority. (*People ex rel.* v. *Assessors,* 156 N. Y. 417; *Patterson* v. *Kentucky,* 97 U. S. 501; *Webber* v. *Virginia,* 103 U. S. 344.) Both patents and

1903.] People ex rel. U. S. A. P. P. Co. *v.* Knight.   477

N. Y. Rep.]      Opinion of the Court, per VANN, J.

copyrights are exempt from all state and municipal taxation, direct or indirect. (*People ex rel.* v. *Roberts*, 159 N. Y. 70; *P. S. Co.* v. *Penn.*, 122 U. S. 326; *N. Y. C. & H. R. R. R. Co.* v. *Comptroller*, 57 App. Div. 302.) The statute, by providing that foreign corporations " shall pay a like tax " to that paid by domestic companies, compels the comptroller to allow the same exemptions to both domestic and foreign companies. (*People ex rel.* v. *Roberts*, 168 N. Y. 14.)

VANN, J. The relator is a domestic corporation, with a capital of $1,100,000, which is substantially all invested in letters patent issued by the United States. Its business is the granting of licenses to lithographers for the use of aluminum plates, for which it charges a royalty. During the years for which the tax in question was imposed it had no surplus and paid no dividend. It employed but about one-third of its capital stock in this state and its indebtedness was about $30,000, which exceeded the value of all its property other than patent rights.

The comptroller appraised its capital stock employed in this state for the year ending October 31st, 1899, at the sum of $22,000 and assessed the tax at $33. For the following year such capital was appraised at $90,000, and the tax assessed at $135. The relator, feeling aggrieved because patent rights were included in the valuation, procured a writ of certiorari to review the action of the comptroller, and from the order of the Appellate Division reversing his determination this appeal was taken.

If the tax under review was assessed upon patent rights, it is void, because they are exempt from taxation by Federal law. (*People ex rel. Edison El. Il. Co.* v. *Assessors*, 156 N. Y. 417.) If, however, it was imposed upon a corporate franchise, involving the right to use all kinds of property, including patent rights, it is not void, because franchises are not exempt by any law.

The system of taxation in this state is so complicated as to invite mistakes on the part of those who are called upon to

enforce the law. In some instances the tax is laid upon property and in others upon rights and privileges connected with property. There is direct taxation of real estate and of some personal property, indirect taxation of other personal property, taxation of the capital stock of corporations and of their franchises, taxation upon the right of succession to the property left by decedents and the like. The case now before us involves one form of taxation to which certain corporations, such as the relator, are subject, and in order to appreciate the principle upon which it is based, we will consider for a moment the other forms of taxation to which corporations of this class are liable.

There is, first, an organization tax, payable to the state, which is imposed but once and is exacted for the privilege of becoming a corporation. (Tax Law, L. 1896, ch. 908, § 180.) Next, there is a tax upon the real estate owned by the corporation in this state, which is assessed the same as if it were owned by an individual. (Id. §§ 3, 11.) The personal property of the corporation is not directly taxed, but its capital stock and surplus, after deducting the assessed value of its real estate and making some other deductions, is assessed at its actual value. (Id. § 12.) Finally, there is a franchise tax on corporations which is payable annually to the state, " computed upon the basis of the amount of its capital stock employed within this state." (Id. § 182.) This is not a tax upon property, although it is measured by the value of property, but upon the right of a corporation to exist and exercise the powers granted by its charter. These forms of taxation do not all rest upon the same principle. The organization tax is in the nature of a license fee for the right to become a corporation. The tax upon real estate is a direct tax upon real property, and the tax upon capital stock is an indirect tax upon personal property, while the franchise tax is not laid upon property at all, but is imposed upon the corporation for the privilege of carrying on business in this state and exercising the corporate franchises granted by the state. The distinction between a tax upon the property of a corpora-

tion and a franchise tax, although well established and of great importance, is easily overlooked, as we find from our own experience. We will refer to some of the cases which make this distinction clear.

In *Monroe County Savings Bank* v. *City of Rochester* (37 N. Y. 365) the tax involved was imposed pursuant to statute upon the franchise and privileges granted to a domestic corporation, and it was claimed that the tax was void because the corporation, a savings bank, had invested part of its funds in United States bonds. The court said: "It now becomes important to inquire whether the assessment in the case now before us is affected by the fact that the banks have invested a portion of their moneys received from depositors, or of the profits arising on such moneys, in bonds or securities of the United States which are exempt from taxation. In my opinion if the whole of the plaintiff's funds were so invested it would not affect the validity of the act. The tax being levied upon the franchises and privileges of the corporation, the special use which it makes of its lawful power is quite unimportant. Because, I repeat, that neither the aggregate property employed, nor the accumulated profits, are taxed. They are regarded as important only as they may furnish a just and fair measure of estimating the value of the property which produced them in order that such value may form the basis of taxation. * * * It is true that where a state tax is laid upon the property of an individual or a corporation, so much of their property as is invested in United States bonds is to be treated, for the purposes of assessment, as if it did not exist, but this rule can have no application to an assessment upon a franchise where a reference to property is made only to ascertain the value of the thing assessed. * * * It must, therefore, be regarded as sound doctrine to hold that the state, in granting a franchise to a corporation, may limit the powers to be exercised under it and annex conditions to its enjoyment, and make it contribute to the revenue of the state. If the grantee accepts the boon it must bear the burden."

This case was cited with approval in *People* v. *Home Insurance Co.* (92 N. Y. 328) which also involved a tax upon the corporate franchise or business of a corporation. (L. 1880, ch. 542, § 3 ; L. 1881, ch. 361.) The defendant in that case claimed that the amount of its investment in United States bonds should be deducted from the total amount of its capital stock upon the ground that such bonds were exempt from taxation. Chief Judge RUGER, after reviewing the authorities, speaking for all the judges, said : " Applying the tests derived from these authorities it seems conclusively established that the act under which this tax was levied must be held to have imposed a franchise and not a property tax, and that its enactment constituted a lawful exercise of legislative power. It is levied upon corporations alone and one of the penalties provided for its non-payment is the forfeiture of their charters. The amount of the tax is dependent upon their business prosperity, as evidenced by their capacity to declare dividends, instead of upon the value of the corporate property and it is made payable by the corporation affected directly to the state authorities. * * * The contention is that we should hold that the legislature has really imposed a tax upon property while professing only to tax a franchise. In other words, the rule of construction claimed is, that we should impute to the legislature an unlawful intent in a case where its action is plainly sustainable upon justifiable grounds. Well and long-settled rules forbid us from placing such an interpretation upon statutory enactments, and require us to make every reasonable intendment to uphold rather than to nullify the exercise of legislative authority. The authorities cited would seem to require us to hold this law valid as a tax upon franchise even though that character had not been expressly ascribed to it by the terms of the act."

The case was removed for review to the Supreme Court of the United States, and in affirming the judgment of this court that court said : " The contention of the plaintiff in error is that the tax in question was levied upon its capital stock, and, therefore, invalid so far as the bonds of the United States

constitute a part of the stock. If that contention were well founded there would be no question as to the invalidity of the tax. * * * Looking now at the tax in this case upon the plaintiff in error * * * it is not a tax in terms upon the capital stock of the company, nor upon any bonds of the United States composing a part of that stock. The statute designates it as a tax upon the ' corporate franchise or business ' of the company, and reference is only made to its capital stock and dividends for the purpose of determining the amount of the tax to be exacted each year. By the term ' corporate franchise or business,' as here used, we understand is meant * * * the right or privilege given by the state to two or more persons of being a corporation ; that is, of doing business in a corporate capacity. * * * The granting of such right or privilege rests entirely in the discretion of the state, and, of course, when granted, may be accompanied with such conditions as its legislature may judge most befitting to its interests and policy. It may require, as a condition of the grant of the franchise and also of its continued exercise, that the corporation pay a specific sum to the state each year or month, or a specific portion of its gross receipts, or of the profits of its business, or a sum to be ascertained in any convenient mode which it may prescribe. The validity of the tax can in no way be dependent upon the mode which the state may deem best to adopt in fixing the amount for any year which it will exact for the franchise. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privilege it bestows. * * * From the very nature of the tax, being laid upon a franchise given by the state, and revocable at pleasure, it cannot be affected in any way by the character of the property in which its capital stock is invested. The power of the state over the corporate franchises and conditions upon which it shall be exercised, is as ample and plenary in the one case as in the other." (*Home Ins. Co.* v. *New York*, 134 U. S. 594.) See, also, other cases decided in that court. (*Society*

31

*for Savings* v. *Coite,* 6 Wall. 594; *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Delaware Railroad Tax,* 18 Wall. 206.)

All these cases relate to United States bonds, but they involve the principle that while a tax cannot be assessed upon property that is exempt by act of Congress, it may be imposed upon the franchise of a corporation to which such exempt property belongs and may be measured by the value thereof. The principle applies with the same force to patent rights as to United States bonds, both of which are exempt from taxation. There is no distinction in this respect between United States bonds, patent rights and copyrights. The same principle underlies the transfer tax, which is imposed upon the right of succession by will or intestacy to the property of a deceased person. It is not laid upon the property thus transferred, although it is computed from its value, and even if the property consists wholly or in part of United States bonds, they are appraised the same as any other property of the decedent for the purpose of ascertaining the amount of the tax. (*Matter of Sherman,* 153 N. Y. 1; *Matter of Whiting,* 150 N. Y. 27; *Matter of Sloane,* 154 N. Y. 109, 113; *Moore* v. *Ruckgaber,* 184 U. S. 593.)

A state cannot tax the property of the United States, yet we upheld a transfer tax upon a legacy to the United States, because it was not a tax upon property, but upon the right of succession. (*Matter of Merriam,* 141 N. Y. 479.)

While the power to tax involves the power to destroy by excessive taxation, when the tax is not imposed for that purpose nor laid upon property, but upon the franchise of a corporation or upon the right of succession by an individual, and all property, whether exempt by Federal law or not, is treated alike by including it in the appraisal made to fix the amount of the tax, the state has the power to impose a franchise or a succession tax, even if, as in this case, substantially all the property so appraised happens to be exempt from taxation by statutes of the United States. Moreover, while excessive taxation upon franchises might destroy the corporation itself,

which is the creature of the state, it could not destroy the letters patent, which, when sold in liquidation proceedings, would confer upon the purchaser an unimpaired right of monopoly.

None of the cases which we have thus far cited were called to our attention, nor was the distinction between a tax upon property and a tax upon franchises pointed out when we had before us the case of *People ex rel. Johnson Co.* v. *Roberts* (159 N. Y. 70). Upon the argument of that case the attorney-general cited *People ex rel. Edison Electric Light Co.* v. *Campbell* (138 N. Y. 543), which involved the question as to what part of the capital stock of the relator therein was employed in this state, and the claim as well as the concession of its counsel was that "the capital stock of the relator invested in the letters patent of the United States and of other countries in North and South America is not liable to taxation here, except in so far as the said letters patent of the United States apply to the territory included within the state of New York." No question as to a franchise tax was involved in the *Edison* case, nor was the distinction between a tax upon the property of a corporation and a tax upon the right of a corporation to continue to live and do business alluded to in any way.

The only other cases cited in behalf of the state upon the argument of the *Johnson* case, except those relating to the good will of the relator therein, which was the main subject of discussion at the bar, were *Palmer* v. *De Witt* (47 N. Y. 539) and *People ex rel. Wiebusch & H. Co.* v. *Roberts* (154 N. Y. 108), in neither of which was the controlling distinction between taxing property and taxing the right to do business as a corporation mentioned or involved. Accordingly, in deciding the *Johnson* case, we overlooked that distinction, treated the tax as imposed upon property, and held that, as copyrights granted by the United States are not subject to the taxing power of the state, the comptroller erred when he included them in making his valuation. There is no distinction, so far as the right of taxation is concerned, between

copyrights and patent rights, and the state has no power to tax either, but it has power to impose a franchise tax upon a corporation which owns either, because that is not a tax upon property, as we have already endeavored to make clear.   The subject is of such importance to the state that we think the rule of *stare decisis* should be departed from in this instance, no rule of property being involved, as otherwise all corporations subject to a franchise tax would escape the burden to the extent that they invested their capital in United States bonds, or any other property exempt from taxation by act of Congress.   (L. 1901, chapters 132 and 535.)

An effort is made to distinguish the *Johnson* case upon the ground that the relator therein was a foreign corporation, while in the case in hand it is a domestic corporation.   This distinction would "result in an unjust discrimination against domestic corporations."   For the reasons given by the learned Appellate Division, we think there is no such distinction. We unite with them in saying that, "The principle of taxation is the same in both cases.   In the case of a domestic corporation, the purpose is to tax that intangible property belonging to it, which is frequently of great value and rests solely in its right to exist and carry on its business; such property is not reached by local taxation, but is by the franchise tax, provided for in section 182, made taxable by the state officers and solely for the benefit of the state at large. After providing for such a tax and arranging for the rate and basis upon which it shall be levied, the same section provides that a foreign corporation shall 'pay a like tax for the privilege of exercising its corporate franchise, * * * within this state, to be computed upon the basis of the capital employed by it within this state.'   In the instance of a foreign corporation it is not its franchise that is taxed, because it is not subject to the laws of this state; but it is that intangible property which rests solely in the privilege allowed it of exercising its franchise within this state, upon which the tax is levied.   * * *   It is no more an assessment upon the patents themselves in the case of a foreign corporation than

it is in the case of a domestic corporation; and in neither is it intended as an assessment upon anything other than a mere intangible right to exercise a franchise within this state."

The interstate commerce case, relied upon by the respondent, is not analogous, because the tax, being imposed directly " upon the gross receipts of said company for tolls and transportation," was not a tax upon franchises but upon " the transportation of persons and property by sea, between different states, and to and from foreign countries." (*Philadelphia & Southern Steamship Co.* v. *Pennsylvania,* 122 U. S. 326.)

The error which this appeal is brought to correct was primarily our own, for the learned Appellate Division properly followed a decision made by us, which, as we now think, was based upon an erroneous principle, and, hence, should be overruled in so far as it held that property owned by a corporation and exempt by the laws of the United States should not be appraised for the purpose of fixing the amount of a tax upon the franchise of a corporation subject to such taxation.

Owing to the importance of the question involved Judge GRAY and Judge MARTIN, who sat in the *Johnson* case, but did not sit in this case, were requested to consider the subject, and we are authorized to announce that they concur in this opinion.

The order of the Appellate Division should be reversed and the determination of the comptroller affirmed, but without costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, CULLEN and WERNER, JJ., concur.

Order reversed, etc.