portance; otherwise it has little or none. But this court on this motion may not consider any theory in respect to the construction of the deed, other than that taken by the trial court, and according to that construction the map, had it been in evidence, would not have changed the result. On this view the newly discovered proofs are immaterial, and the motion must be denied, with costs.

Motion denied, with costs.

---

(96 App. Div. 436.)

SECURITY TRUST CO. OF ROCHESTER v. LIBERTY BLDG. CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. LEASE—PAYMENT OF TAXES BY LESSEE—CONSTRUCTION—INTENTION.

An agreement whereby a trust company leased real estate to defendant provided that the trust company should pay all taxes thereon so long as they should be deducted from its capital in fixing the amount of the same liable to taxation, but that otherwise defendant should pay them. At the time of the lease the trust company's capital stock was, under Laws 1857, p. 1, c. 456, assessed at its full value, less the value of real estate, but no franchise tax was imposed. Laws 1901, p. 316, c. 132, enacted subsequently, required a trust company to pay to the state annually, for the privilege of exercising its corporate franchises, a tax computed upon the actual value of its capital stock, surplus, and undivided profits, and exempted it from all other taxation, except upon its real estate. *Held*, that a contention that thereafter defendant should pay taxes, on the ground that, as there was no assessment of its capital stock, there was nothing from which to deduct the assessed value of the demised premises, was of no merit; the intention of the agreement being to relieve the trust company from being twice taxed on the real estate, and the franchise tax not being on the property.

2. SAME—TRUST COMPANIES—FRANCHISE TAX.

The franchise tax imposed by Laws 1901, p. 316, c. 132, is not a tax on property, but on corporate functions.

Action by the Security Trust Company of Rochester against the Liberty Building Company. Submission on agreed facts. Determination in favor of defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Edward Harris, for plaintiff.
Porter M. French, for defendant.

McLENNAN, P. J. Ever since and including the year 1895 the parties to this submission have been domestic corporations residing in the city of Rochester, N. Y. On the 27th day of June, 1895, by an agreement evidenced by two instruments in writing dated that day, the plaintiff leased to the defendant certain premises situate in the city of Rochester, N. Y., for the term of 20 years, at the yearly rental of $4,000. The defendant was given the option to purchase the property at any time during the said term for $100,000, and agreed to deposit $40,000 with the plaintiff, which was to be credited upon the purchase price, if the option was taken. If not, $20,000 of the deposit was to be retained by the plaintiff as the consideration of the option, and the

balance returned to the defendant. The defendant also agreed to expend at least $40,000 in erecting buildings upon and in improving said property before the 1st day of July, 1896, all of which were to belong to the plaintiff in case the option was not taken by the defendant. By such agreement the plaintiff undertook—

"To pay the city, county and state taxes upon the premises so leased during the continuance of said term so long as it continues to be assessed to it upon the tax roll of both the City of Rochester and the County of Monroe, and the amount of such assessment continues to be deducted from its capital in fixing the amount of such capital liable to taxation."

It also provided that:

"The party of the second part [the defendant] shall pay all assessments for improvements upon said property; all water taxes and rates; and all taxes and assessments of every nature thereon, if the deduction hereinbefore referred to shall cease to be made for any reason other than the transfer of the legal title to said premises by the party of the first part [the plaintiff] to parties other than the party of the second part."

On or about the date of said agreement the defendant entered into and has since been in possession of the demised premises as lessee, not yet having exercised its option to purchase. It made the deposit and erected the buildings all as required by the contract, and concededly kept and performed all the obligations claimed to have been imposed thereby, except that it neglected and refused to pay the city, county, and state taxes assessed against said property for the years 1901, 1902, and 1903, which the plaintiff was thereupon compelled to pay, and now seeks to recover. The rights of the parties in that regard present the only question involved in this submission.

At the time of making the lease and accompanying agreement the statute provided:

"The real estate of all incorporated companies liable to taxation shall be assessed in the town or ward in which the same shall lie in the same manner as the real estate of individuals." 1 Rev. St. (Banks' 5th Ed.) p. 908, pt. 1, c. 13, tit. 2, § 6; 2 Rev. St. [Banks' 9th Ed.] p. 1681, pt. 1, c. 13, tit. 2, § 6.

Chapter 456, p. 1, 2 Laws 1857, which was in force at the time in question, required that the capital stock of corporations of the character of the plaintiff shall be assessed at its full value, but provided that the assessed value of the real estate owned by such corporations should be deducted therefrom. Thus provision was made for the taxation of all tangible property belonging to such corporations, but prevented double taxation, which would have resulted except for the provision which required the deduction aforesaid to be made. At that time no franchise tax was imposed, and, under the agreement interpreted with reference to the law as it then existed, the rights of the parties were perfectly plain. The defendant could not be required to pay any taxes upon the demised premises so long as their assessed value was deducted from the actual value of plaintiff's capital; and it is conceded that during the years 1901, 1902, and 1903 its capital, surplus, and personal property exceeded the value of its real estate by at least $120,000. In 1901 the Legislature assumed to change the law relating to the taxation of corporations like the plaintiff, and thus the controversy between the parties to this submission arises.

Chapter 132, p. 316, of the Laws of 1901, in substance, required a trust company to pay directly to the state, annually, for the privilege of exercising its corporate franchises, a tax of 1 per cent., computed upon the actual value of its capital stock, surplus, and undivided profits, and exempted it from all other taxation, except upon its real estate, which remained taxable as before. By such enactment the capital, surplus, and personal property of such corporations were not taxable at all, but, instead, their franchises were taxed, and the value of the capital, surplus, etc., was only ascertained for the purpose of determining the amount of such tax. The plaintiff contends that as there was no assessment of its capital stock for the years 1901, 1902, and 1903, there was nothing from which to deduct the assessed value of the demised premises, and that therefore, by the terms of the agreement, the defendant became obligated to pay the taxes assessed against such premises. We think plaintiff's contention is untenable. The purpose and intent of the provisions of the agreement under consideration were to relieve the plaintiff from being twice taxed upon the property in question, and not to relieve it, in any event, from all taxation thereon. By the change in the law the capital, surplus, etc., of the plaintiff were exempted from taxation. Did the parties intend that upon the happening of such event the plaintiff should also be relieved from paying taxes upon the demised premises? The franchise tax imposed upon the plaintiff, and which it paid during the years in question, was not a tax upon its property, either real or personal, but was a tax upon its right to exercise its corporate functions. People ex rel. U. S. A. P. P. Co. v. Knight, 174 N. Y. 475, 67 N. E. 65, 63 L. R. A. 87. The value of its property was only referred to or ascertained for the purpose of determining the amount of such tax. The amount of such tax would have been precisely the same if its entire property had consisted of real estate, or if it had been invested in United States government bonds, which are expressly exempt from taxation by the state. 174 N. Y. 475, 67 N. E. 65, 63 L. R. A. 87. It was the good fortune of the plaintiff to have its capital, surplus, undivided profits, and personal property relieved from taxation. We think, however, that such good fortune coming to it ought not to be held to impose an additional burden upon the defendant under the terms of the agreement under consideration. Under the authority referred to (174 N. Y. 475, 67 N. E. 65, 63 L. R. A. 87) the Legislature had the right to tax the real estate of the plaintiff, to tax its capital stock, surplus, etc., and in addition to impose a franchise tax. By the law as it now stands, the real estate is taxed, the personal property is exempt from taxation, and a tax is imposed upon the right to exercise its corporate franchise. There is no double taxation, and therefore no condition exists which makes operative the obligation assumed by the defendant under the provisions of the contract in question.

The defendant urges that at least during the years 1901 and 1902, notwithstanding the alleged change in the law, the plaintiff should have been assessed upon its capital stock, surplus, etc., and that the failure to so assess it was due to the fault or neglect of the assessors. We deem it unnecessary to determine that question, as it seems to us clear that it was the intent and purpose of the parties when entering into

the agreement in question that the defendant should only be required to pay the taxes upon the demised premises in case the plaintiff was assessed upon it as real estate, and again by having the value thereof added to its capital, upon which it was also assessed. It is unimportant whether the failure to assess plaintiff's personal property resulted from the fault or failure of the assessors, from the change in the law, or from any other cause, so long as the value of the real estate in question did not add to or increase the burdens of the plaintiff in that regard.

These considerations lead to the conclusion that the plaintiff is not entitled to recover from the defendant the amount of taxes paid by it during the years 1901, 1902, and 1903, and that judgment should be rendered in favor of the defendant to that effect, with costs. All concur.