In the Matter of the Application of the R. T. FRENCH COMPANY, Petitioner, for a Certiorari Order against THOMAS M. LYNCH and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, June 30, 1931.

*Burke & Burke [Daniel Burke, Thomas Gregory* and *James Bundy Burke* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General [Wendell P. Brown, Assistant Attorney-General,* of counsel], for the respondents.

VAN KIRK, P. J.   The petitioner is a foreign corporation doing business both within and without the State of New York.

The R. T. French Company, a Massachusetts corporation, did business as a manufacturing corporation in this State prior to and during the year 1925, under its certificate of authority so to do. Its manufacturing plant and business were located at Rochester, this State.   As shown by its tax return, filed July 1, 1926, it earned a substantial net income in 1925 and a franchise tax was thereupon assessed against it, under the Tax Law, article 9-A, in the sum of $23,415.57.   This tax, as will later appear, was canceled and a tax for a like amount assessed against the petitioner, a Delaware corporation, having the same name.   We shall speak of the two corporations respectively as the Massachusetts corporation and the petitioner.   Petitioner was organized July 15, 1926, and, having a certificate of authority so to do, commenced doing business in this State September 23, 1926.   It had acquired the name, the good will, the plant, the business and the assets of the Massachusetts corporation.

After a considerable correspondence between the petitioner and the Tax Commission, on January 12, 1927, the petitioner filed a

*special* report, in which were set forth the facts as they had been stated in the report of the Massachusetts corporation on July 1, 1926, together with the facts of its own incorporation, when it began business in this State and that it had indirectly acquired the assets of the Massachusetts corporation. Thereupon the tax, which was assessed against the Massachusetts corporation on its report of July 1, 1926, was canceled and a tax for like amount assessed against the petitioner. As the correspondence shows, this method of procedure was adopted with the approval of the petitioner, it reserving, however, the right to contest the tax on the ground that the statute under which it was assessed is unconstitutional.

On July 1, 1927, the petitioner filed its report showing its net income for the year 1926. Its segregated assets wherever located amounted to $3,366,597.49; and its assets in the State of New York $1,958,853.18. Thereupon a tax in the sum of $14,630 was assessed for the year beginning November 1, 1927. The petitioner paid both taxes under protest and asked for a revision. The latter tax was confirmed but was adjusted at $9,643.04; the former tax was confirmed. The Delaware corporation claims it should have been assessed under section 214 of the Tax Law, instead of under section 214-a.

The petitioner's position as stated in its brief is this: " Because section 214-a of the Tax Law purports to impose a franchise tax on the relator measured by the income of another corporation, it is the contention of the relator that this section violates the Constitution of the United States and of the State of New York, in that it deprives the relator of its property without due process of law; that it also violates the Constitution of the United States in that it deprives the relator of the equal protection of the laws and imposes a burden on interstate commerce contrary to the Commerce Clause; and that section 214-a does not apply and is not intended to apply to such a case as this where there has been a *bona fide* sale and transfer of property to a corporation in no way connected with the corporation formerly owning such property, and especially since such property was not sold and transferred to the relator by the corporation formerly owning the same, but had been distributed in liquidation to its stockholders by whom as individuals it was sold and transferred to the relator."

Under this statute, section 214-a, the State does not assert the right to tax property outside of its borders; nor to tax income

of foreign corporations earned ·outside the State. The statute declares (Tax Law, § 209, added by Laws of 1917, chap. 726, as amd. by Laws of 1924, chap. 329, and Laws of 1927, chap. 479)█ that a foreign corporation having the privilege of doing business in this State must annually pay in advance for the year beginning November first next succeeding July first in each and every year an annual franchise tax to be computed upon the basis of its entire net income for the year preceding. If the entire business of the corporation be not transacted within the State, the tax imposed will be based upon the proportion of the entire net income to be determined by the rules set forth. (Tax Law, § 214, added by Laws of 1917, chap. 726, as amd. by Laws of 1925, chap. 323.)█ It is not claimed that there was any failure to comply with this section of the statute in allocating to determine the tax base.

The tax is a franchise tax measured by income; it is not an income tax. (*People ex rel. Bass, Ratcliff & Gratton, Ltd.*, v. *Tax Comm.*, 232 N. Y. 42; affd., 266 U. S. 271.) In that case the sole question considered was " the constitutionality of the operation of the Tax Law which makes as the basis of relator's taxable net income in New York a portion of its net income earned wholly outside the State." The court held that this method of levying a franchise tax is not inherently arbitrary, nor has its application to the corporation produced an unreasonable result; that it would be unreasonable to exempt relator from taxation upon its large, though unprofitable, business in this State. In the opinion on appeal to the United States Supreme Court the holding in the Court of Appeals was affirmed and the court said: " There is no sufficient reason why a foreign corporation desiring to continue the carrying on of business in the State for another year — from which it expects to derive a benefit — should be relieved of a privilege tax because it did not happen to have made any profit during the preceding year. This is especially true where, as in the present case, the corporation is entirely relieved of any personal property tax." We do not think that the statute deprives petitioner of its property without due process of law, or deprives it of the equal protection of the laws, or that it imposes a burden upon interstate commerce.

The petitioner's real objection is stated in its reply brief: The basic objection to this law is that, as a franchise tax measured by income, " it is inherently arbitrary, capricious and unreasonable, in that it in effect imposes a tax on one corporation based on or

measured by the income of another corporation." Section 214-a of the Tax Law (added by Laws of 1918, chap. 292, as amd. by Laws of 1925, chap. 323) is entitled: "Taxation of corporations acquiring assets or franchises of other corporations." It provides: "If any business corporation shall acquire either directly, indirectly or by merger or consolidation the major portion of the actively employed assets or the franchises of another corporation * * * it shall on or before the first day of July, or within thirty days after such acquisition * * * if consummated between the thirtieth day of June and the first day of November, file a report and include therein a statement showing its own and the consolidated entire net income of all such corporations for preceding calendar or fiscal years to the extent that all such income has not been used or included in measuring a franchise tax to this State. It shall, in any event, be liable for and pay all taxes that would have been due and payable by the corporation, or corporations, on or before the first day of January next succeeding had the corporation or corporations whose assets or franchises were acquired * * * continued in business and as though there had been no interruption or change of the business thereof nor discontinuance of the privilege of exercising a franchise. It shall also include in its own next annual return, in addition to its own entire net income, so much of the entire net income of corporations whose assets or franchises it acquired * * * as shall not have been used or included in measuring a franchise tax to this State, and shall be taxed upon such combined entire net income for the year to ensue."

The purpose of this statute was manifestly to prevent a corporation from escaping the payment of taxes. The tax is payable in advance for a privilege to be exercised in the future. By dissolving a corporation at a chosen time, a foreign corporation could avoid the paying of this tax, although it has enjoyed the privilege of doing business in this State. (*People ex rel. Claire Belle Dresses, Inc., v. State Tax Comm.*, 221 App. Div. 471; affd., 248 N. Y. 568.) "It was proper to make provision to prevent such a possibility." (*Denman* v. *Slayton*, 282 U. S. 514, 520.) We do not think there is any attempt here to impose a tax on one corporation based or measured by the income of another corporation. In our view the roundabout method by which the assets of the Massachusetts corporation were transferred to the petitioner was for the purpose of avoiding a tax. A direct transfer of the property or of the stock of the corporation would have accomplished the same result. The method was not undertaken until it had been fully planned by the

parties interested. George J. French was president, Francis J. French, vice-president, and F. M. Enos, secretary of the Massachusetts corporation. These persons took identical offices respectively in the petitioner corporation when organized. The negotiations looking to the end accomplished were taken and carried through by parties having mutual interests. The purpose was to acquire not only the assets and business and property of the Massachusetts corporation, but likewise to acquire its name and good will. To this end the name of the Massachusetts corporation was changed to the Resom Liquidating Corporation. This left the name of the Massachusetts corporation to be assumed by petitioner. The two Frenches and Enos were officers of the Resom corporation, whose affairs were to be wound up. They took over in form to themselves as trustees for the stockholders its property, assets and good will, which in turn they transferred to petitioner, of which they were officers as above stated. They as trustees were vendors and as chief officers of the petitioner the vendees of this transfer. The business was carried on in this State without interruption during the entire period, at the same place, under the same name and under the management of the same officers. All the time the business was carried on in the State of New York under a certificate issued to authorize that business. There was not one hour's intermission in enjoying this privilege.

The petitioner is the successor, or the other self, of the Massachusetts corporation in respect to this business. It acquired the business and assets of the Massachusetts corporation as completely and truly as if the purchase had been made directly by the petitioner. The liquidation of the Massachusetts corporation, under its changed name, was a mere gesture, an attempt to avoid payment of the taxes. These taxes are not, in the sense claimed by petitioner, imposed " on one corporation based on or measured by the income of another corporation." They are imposed under a statute which is not shown to be capricious, arbitrary or unreasonable and which we believe to be constitutional.

The determination of the Tax Commission should be confirmed, with fifty dollars costs and disbursements.

All concur.

Determination confirmed, with fifty dollars costs and disbursements.